## Appeal of L. Candee & Company.

*Preference—Contingent liability—Debt not due—Fraud.*

A debtor may secure his friend against a contingent liability.

A judgment confessed to secure an indorser on notes that are not due is not fraudulent for lack of consideration.

*Fraud—Contingent liability—Relationship.*

An actual debt or contingent liability existing, an auditor may not infer a fraudulent transaction from the mere fact of preference; nor is the relationship of the creditor a badge or evidence of fraud.

*Creditor's right to secure preference—Fraud.*

A creditor has a legal right to influence his debtor to give him a preference; such creditor likewise has a right to be secretive and energetic in order that other creditors may not forestall him.

*Fraud—Preference—Judgment—Relationship.*

A partner may without fraud confess a judgment in the firm name to secure another firm against a contingent liability as indorser on paper of the first partnership, nor does the fact that one member of the creditor firm was a brother of a member of the debtor firm tend to invalidate the judgment.

Argued April 18, 1899. Appeal, No. 54, Jan. T., 1899, by Candee & Co., from decree of C. P. Blair Co., Oct. T., 1895, under writs of fi. fas. Nos. 51 and 52, sustaining exceptions to auditor's report. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The facts sufficiently appear from the opinion of BELL, P. J., as follows:

On July 12, 1895, two judgments were entered against Fox & Curtis, to wit: No. 393, June term, 1895, for $4,500, in favor of Curtis, Jones & Co.; and No. 394, June term, 1895, for $5,000, in favor of S. M. Meredith, in trust for Candee & Co. On same day fi. fas. were issued on said judgments, but the fi. fa. on the Curtis, Jones & Co. judgment was first placed in the hands of the sheriff, thus giving it priority over the Candee & Co. judgment, so far as concerned personal property. The auditor, however, has found the Curtis, Jones & Co. judgment to

be void and fraudulent as to creditors, and has awarded the proceeds of both the personal and real property to the Candee & Co. judgment. In this, I think, there was error on the part of the auditor, and I feel free to correct same, because the finding of the auditor was based, not so much on facts, pure and simple, as on deductions from facts. Such deductions are not so binding on a court as would be the finding of an auditor on facts pure and simple: Phillips's App., 68 Pa. 130; Sproull's App., 71 Pa. 137; Kutz's App., 100 Pa. 75.

The firm of Curtis, Jones & Co., consisted of Fred W. Curtis and      Jones; their business was wholesale boots and shoes, in Reading, Pa. The firm of Fox & Curtis consisted of George Fox and J. A. Curtis; their business was likewise wholesale boots and shoes, in Altoona. Fred W. Curtis and J. A. Curtis were brothers. From 1886, on down to the time of entry of said judgments, said two firms carried on the practice of exchanging notes to the extent of $4,500; that is to say, Fox & Curtis gave their notes for $4,500 to Curtis, Jones & Co., who had same discounted by Reading banks; in exchange therefor, Curtis, Jones & Co. gave their notes for $4,500 to Fox & Curtis, who had same discounted by Altoona banks. It is needless to determine the relative legal rights of these respective parties on the respective notes, so long as the seemingly endless chain of mutual accommodation paper was kept running. What we have to deal with is their legal rights and liabilities when events occurred which stopped movement of the chain. Nor is it very material at whose instance the chain was first put in motion. The auditor finds that it was at the request of Curtis, Jones & Co., but he also finds that it was for the benefit of Fox & Curtis; "by the desire of Fred W. Curtis" "to furnish" "more capital" for "Fox & Curtis." As has been said, the respective legal liabilities of these respective mutual accommodation indorsers are immaterial so long as the chain would continue to run; so long as each firm was solvent and able to take care of and renew its notes there could be no controversy. But suppose one firm should become embarrassed, in failing circumstances, while the other firm was solvent and prosperous; would not, under such a state of circumstances, the solvent and prosperous firm, unless it looked after its own interests promptly, stand a very probable chance of not only

having to lift its own notes, but likewise having to pay the notes of the other firm on which it was indorser? In other words, under such a state of circumstances, would not a very probable contingent loss of $4,500 stare the solvent firm in the face? And this was the state of the present case in July, 1895. Curtis, Jones & Co. were worth at that time at least $175,000. The auditor fails to find specifically whether Fox & Curtis, at that time, were solvent or insolvent. I found as a fact, in the opening paragraph of my opinion in Fox & Curtis's Appeal, 176 Pa. 53, that "on July 12, 1895, Fox & Curtis, wholesale shoe dealers of Altoona, were insolvent." A reading of the testimony taken before the auditor confirms said finding. Regard being had to the fact that they had compromised with their creditors in 1893; that their total sales only amounted to $3,000 per month; that the partners had overdrawn their accounts; that they were always in need of money, as testified to by Mr. Fiske; that part of their assets consisted of old uncollected accounts, as testified to by receiver Hughes, and the fact that this controversy is now before the courts—because if solvent there would have been sufficient assets to pay all their creditors—and there can be little doubt that the firm of Fox & Curtis were insolvent on July 12, 1895. They were financially embarrassed. All that was required was for some creditor to move on them legally, and they would topple over. There were not sufficient assets to satisfy all the creditors; if legal measures were resorted to, some one was bound to be left. On July 12, 1895, then, Curtis, Jones & Co. were facing a probable loss of $4,500, incurred or likely to be incurred by reason of their being parties with Fox & Curtis, in mutually and interchangeably negotiating accommodation paper, and subsequent events have shown that the loss was not only a probable one; in other words, they have been compelled to pay, not only their own notes to the order of Fox & Curtis, but also the Fox & Curtis notes to the order of Curtis, Jones & Co. Such contingent liability was a good and valid consideration for the judgment note, taken by S. M. Meredith, attorney for Curtis, Jones & Co., from J. A. Curtis for Fox and Curtis, for $4,500, on July 12, 1895, and entered to No. 393, June term, 1895. The fact that the liability was only contingent would not impair its validity as a consideration: Braden v O'Niel, 183 Pa. 467. It is there said by Mr. Justice

WILLIAMS : " The question comes down to this : Can a debtor secure his friend against a contingent liability ? We answer this question in the affirmative. This has been so held as to bail : " Davis v. Charles, 8 Pa. 82. Nor does the fact that the notes were not due invalidate the consideration : Boyd v. Thompson & Coxe, 153 Pa. 78.

Counsel for Candee & Co., the creditors attacking said judgment of Curtis, Jones & Co., evidently felt the force of the foregoing reasoning, for he attempted to evade it by a contention which, although it seems to have been adopted and virtually followed by the auditor, to my mind seems without real weight.

In his brief, submitted to the auditor and likewise to the court, said counsel says : " It is admitted that a future contemplated debt, a contingent liability, or a promise to be performed in the future, can be made the subject of a present judgment. The foundation of the judgment so confessed to Curtis, Jones & Co. could therefore have been the promise or agreement of Curtis, Jones & Co. to pay all these eight several exchanged and accommodation notes, but the evidence of Fred W. Curtis shows that the foundation was, viz : that the judgment so confessed was founded upon the liability of Fox & Curtis *as makers of the four notes held by Curtis, Jones & Co.* Having fixed such liability as the foundation of such judgment, they cannot now shift their position and claim that the judgment is founded on anything else than the original consideration, viz : The liability of Fox & Curtis as makers of these accommodation notes."

The italics are the work of counsel. Evidently he intends to call attention to and lay stress upon the testimony of Fred W. Curtis, taken December 28, 1895, which is as follows : " Q. (by Mr. Leisenring, as if on cross-examination). Then the foundation of the judgment which was confessed by Fox & Curtis to Curtis, Jones & Co. was their liability as makers of these notes of which you speak ? A. I desire to explain this matter." The witness then goes on at length to explain about his own trip to Altoona, and how he came to send Attorney S. M. Meredith. " Q. This answer is not an answer to the question which I asked you. I now ask you again whether the foundation of the judgment which was confessed by Fox & Curtis to the firm of Curtis, Jones & Co. on July 11, 1895, was based upon those notes of which you have spoken heretofore given

you by Fox & Curtis? A. The foundation was *that we expected to lose* on the notes that we held against Fox & Curtis. Q. Were Fox & Curtis indebted to the firm of Curtis, Jones & Co. for anything else than their notes which you held? A. No, sir. Q. Then the foundation of the judgment confessed on July 11 were these notes? A. Yes, sir; I suppose that is right."

The italics —" that we expected to lose "—are mine, and show I think, that the witness meant to say that the foundation of the judgment was not any particular notes, but an expected loss. It is evident that, although Fred W. Curtis may not have been sufficiently versed in legal lore to explain just how Fox & Curtis were legally liable, he had sufficient business shrewdness to know that there was a probable loss impending, and the judgment was taken to indemnify against such loss. But, assume that, on December 23, 1895, he was made, by the questions of astute counsel, to base his claim on an insecure legal foundation, if his claim was a just one why should he not be permitted thereafter to "shift" his "position" and state the true legal foundation? And on July 14, 1897, the same witness, Mr. Fred W. Curtis, did again go on the witness stand and relate how his firm, Curtis, Jones & Co., had to pay not only their own notes, but also the Fox & Curtis notes, and, in effect, state that the attendant loss from paying both sets of notes was the foundation for the judgment. I conclude, then, that the said judgment, No. 393, June term, 1898, Curtis, Jones & Co. v. Fox & Curtis, $4,500, was founded on a valid consideration, and that the auditor in his conclusion founded on deductions from facts, that said judgment was invalid because not supported by or given for a valid consideration is in error. But the auditor likewise found that there was actual fraud, independent of mere want of consideration, or, assuming that there was a valid consideration, which would vitiate or invalidate said judgment, and postpone the execution issued thereon so as to let in on the fund arising from the sale of personal property the junior execution of Candee & Co. This finding, as to actual fraud, is likewise founded mainly on inferences from facts, and to my mind is erroneous and unwarranted.

The auditor, while professing to be guided by correct legal principles, seems really to have lost sight of the familiar prin-

ciple that "fraud is not to be presumed, but must be proved." Thus, the auditor, almost at the outset of his inquiry, seems to think the burden is "upon Curtis, Jones & Co. to throw all the light upon the transaction possible," quoting "Kane v. Weigley, 'to repel it by clear evidence or else stand convicted.' To the auditor it seems that very early in the case the burden of clearing their skirts was placed upon Curtis, Jones & Co." Following up this line of thought, the auditor, seemingly, "convicts Curtis, Jones & Co. upon suspicion alone." True, the auditor quotes and professes to be guided by the following language of Mr. Justice MITCHELL in Werner v. Zierfuss, 162 Pa. 366: "It may be considered as an established result of our cases that if a creditor takes a judgment, or conveyance, or payment in any form, to secure an actual debt, the transaction will be valid against other creditors, although he knew (1) that the effect would be to postpone the others; (2) that the debtor intended it to have that effect; and (3) although he took it to aid that intent as well as to protect himself. The criterion is not the effect, but the fraudulent intent. Without that the transaction cannot be impeached." But the auditor seemingly failed to give any heed to the next sentence in said opinion in Werner v. Zierfuss, which is as follows: "A corollary of the foregoing rule is that where there is an actual debt, the jury cannot be permitted to infer a fraudulent intent from the mere fact of payment, or preference given to it." The auditor likewise failed, seemingly, to be guided by the legal doctrine laid down in the preceding paragraph of said opinion: "The rule is different when property is taken for a debt. One creditor of a failing debtor is not bound to take care of another. It cannot be said that one is defrauded by the payment of another. In such case, if the assets are not large enough to pay all, somebody must suffer. It is 'a race in which it is impossible for every one to be foremost.' He who has the advantage, whether he gets it by preference of the debtor, or by his own superior vigilance, is entitled to what he wins, provided he takes no more than his honest due."

The auditor very properly holds that fraud need not be directly proved, that it may be inferred from circumstances, "from the united force of disjointed facts." "The cumulative force of many separate matters, each perhaps slight, as in the familiar

bundle of twigs, constitutes the strength of circumstantial proof: ' Mr. Justice MITCHELL, in Montgomery Web Co. v. Dienelt, 133 Pa. 595.

An examination of the testimony, however, in this case will, I think, disclose the fact that the "bundle of twigs" is not of sufficient strength to sustain the finding of the auditor that there was actual fraud whether said twigs be considered singly, or as a whole.

The auditor deems "the manner of the witnesses on the stand" and some alleged contradictions in their testimony, on which he dwells at length, to be badges of fraud. Where there is contradictory evidence as to material facts, the opinion of an auditor as to which witness is telling the truth is entitled to great weight, but, where the alleged contradictions are as to immaterial matters, the matter becomes comparatively unimportant. The alleged contradictions, alluded to by the auditor, are as to immaterial matters. Take the matter of the date of the notes. The auditor says as to this : "Whatever may have been the purpose or object of misdating the note the auditor is unable to say, but that there was a sinister purpose in it he is not prepared to deny." But why impute a sinister purpose when explanations consistent with a proper motive are at hand, such as an honest mistake as to the correct day of the month, etc. So, too, as to the other contradictions referred to by the auditor, as to Mr. Fred W. Curtis's statement at one time that the note was not prepared in Altoona, afterwards that he thinks he saw something like it at Reading, before Mr. Meredith came to Altoona; the further circumstances, on which the auditor lays much stress, that Mr. Meredith was contradicted as to the day of the month on which he came to Altoona, as to his interview with Mr. Fox, and whether it was the fault of Meredith or of Fox that no subsequent meeting between them was held.

If said judgment note was given for a valid consideration, it is immaterial whether it was dated July 11 or 12, as it was payable "on sight." So likewise it is wholly irrelevant as to whether it—the judgment note—was prepared in Reading or in Altoona. If Mr. Meredith was only seeking to obtain payment of an honest claim due his clients, it was not incumbent on him to see Mr. Fox at all if he could more easily procure a confession of judgment from J. A. Curtis, the other partner. In this

connection, it may not be amiss to remark that the auditor loses sight of, or at least seems to attach no importance to, the facts preceding the coming of Attorney Meredith to Altoona. Fred W. Curtis, of Curtis, Jones & Co., had been in Altoona in June, and had offered to take the assets of Fox & Curtis and pay said firm's debts, dividing any surplus between the partners. It was only after what seemed to Fred W. Curtis an unusual and uncalled for delay in answering said proposition that the attorney of Curtis, Jones & Co. was sent to Altoona to protect the interests of that firm. This circumstance, namely, the offer to take assets and pay debts, it seems to me, shows that Curtis, Jones & Co. were not fraudulently unmindful of the rights of others, and only had recourse to extreme measures as a last resort.

The relationship between Fred W. Curtis and J. A. Curtis, to which the auditor seems to attach some importance, at one time in Pennsylvania might have been deemed a badge of, or evidence of fraud, but a contrary rule now prevails : Collins v. Cronin, 117 Pa. 44 ; Kitchen v. McCloskey, 150 Pa. 376.

The alleged fact that Mr. Meredith, attorney for Curtis, Jones & Co., influenced the action of J. A. Curtis, and the secrecy and haste connected with the transaction are commented on by the auditor as evidence of fraud. But a creditor has a legal right to influence his debtor to give him a preference ; such creditor likewise has a just right to be secretive and energetic in order that other creditors may not forestall him. The secrecy and haste in the present case doubtless was caused by a belief engendered in the mind of Attorney Meredith that Mr. Fox, the other partner, was consulting counsel with a view of taking some decided legal steps prejudicial to the intended preference to Curtis, Jones & Company.

A creditor has a right to issue a fi. fa. and an attachment execution at the same time. As to the removal of securities from the office of Fox & Curtis, it was not a "looting." It was the transfer of said securities to E. H. Flick, as trustee. Trustee for whom ? Curtis, Jones & Co. and L. Candee & Co. ; no preference to Curtis, Jones & Co. over L. Candee & Co., but to both claims pro rata. This same claim of L. Candee & Co. is given the fund for distribution by the auditor, to the prejudice of Curtis, Jones & Co., on the theory that Curtis, Jones & Co. was trying

to defraud L. Candee & Co. Certainly such alleged "looting" was not in fraud of the rights of L. Candee & Co.; it was rather for their protection. And events have shown that no excess of property over and above a sufficient amount to pay the claims of Curtis, Jones & Co. and L. Candee & Co. were either levied on by fi. fa., attached on execution or assigned to a trustee.

After a careful reading of the report of the testimony, I have come to the conclusion, without either impugning the honesty, judgment or legal ability of the auditor, that his conclusions are incorrect; that there was a valid consideration for the Curtis, Jones & Co. judgment, and that it was not used to hinder, delay or defraud creditors. Possibly, the error on the part of the auditor arose from his seeming prejudice against the claim of Curtis, Jones & Co., as inequitable, as tending to give Fox & Curtis a false credit. But such is almost always the inevitable result of borrowing money from confidential friends; creditors have no legal right to complain so long as no actual misrepresentations are made. Wholesale houses have a method of guarding against such secret claims, if they see fit to adopt it, by taking statements from their debtors before they sell them goods.

The exceptions as to Mrs. Fox's rent claim was not seriously pressed, or argued, by counsel.

In the distribution I have allowed but five per cent attorney's commission; it would be unreasonable to require the debtor to pay more than that amount, but I by no means intended to thereby intimate that counsel should receive only that amount from their clients. The computation of the amount of the judgment No. 393, in favor of Curtis, Jones & Co., would be as follows: Debt, $4,500; attorney's commission, $225; interest, say three years, $810; aggregate, $5,535. This judgment is not paid in full because the judgment No. 394, June term, 1895, L. Candee & Co., plaintiff, having been entered on same day, is entitled to pro rata on the real estate fund.

### DECREE.

Now, January 3, 1899, the distribution as made by the auditor is reversed or modified in the following particulars: The balance of the proceeds of sale of personal property, after deducting costs of sale, costs of audit, etc., to wit: the sum of $4,390.27, which the auditor appropriates to the judgment of L. Candee &

Co., No. 394, June term, 1895, on account, is now appropriated to judgment No. 393, June term, 1895, fi. fa. No. 51, October term, 1895, Curtis, Jones & Co., plaintiff, as follows: To attorney's commission, $225; to debt and interest on account, $4,165.27. The balance of the proceeds of sale of real estate, remaining after paying costs of sale, costs of audit, etc., to wit: the sum of $906.18, which the auditor appropriates to the judgment of L. Candee & Co., No. 394, June term, 1895, is now appropriated as follows: To judgment No. 393, June term, 1895, Curtis, Jones & Co., plaintiff, on account of debt and interest, $429; to judgment No. 394, June term, 1895, L. Candee & Co., plaintiff, on account of debt and interest, $477.18.

So far as this distribution is in accordance with exceptions filed, such exceptions are sustained, the other exceptions are overruled and the report with the distribution so changed or modified is confirmed absolutely.

*Errors assigned* among others were (1) in overruling the finding of the auditor that the consideration for the judgment given by Fox & Curtis to Curtis, Jones & Co. was the liability of Fox & Curtis as makers of the accommodation notes given by them to Curtis, Jones & Co., and in concluding that said judgment was founded on a valid consideration; (2) in overruling the finding of the auditor that the judgment of Curtis, Jones & Co. was without consideration and void, and in ruling said finding to be erroneous and unwarranted; (3) in reversing the distribution of the auditor appropriating the sum of $4,390.27, proceeds of personal property, to the judgment and execution of L. Candee & Co., and in appropriating the same to the judgment and execution of Curtis, Jones & Co.; (4) in appropriating the sum of $4,390.27, proceeds of personal property, exclusively to the execution of Curtis, Jones & Co., instead of distributing the same pro rata between the executions of S. M. Meredith, trustee for L. Candee & Co., the appellants, and of Curtis, Jones & Co., the appellees; (5) in his decree, in which the learned court reverses the distribution of the auditor appropriating the sum of $906.18, proceeds of real estate, to judgment of L. Candee & Co., and appropriating $429 thereof to the judgment of Curtis, Jones & Co.; (6) in not confirming the distribution of the auditor under which the

said amounts of $4,390.27 and $906.18 were appropriated to the judgment and execution of L. Candee & Co.

*Pascoe*, of *Stevens, Owens & Pascoe*, with them *J. S. Leisenring*, for appellants.—The conclusions of the learned auditor were findings of fact, and not a deduction from facts, as the learned court below seems to have concluded; and as such finding of fact it is entitled to the same weight as the verdict of a jury, and is not to be set aside except for manifest error: Speakman's Appeal, 71 Pa. 25; Schepper's Appeal, 125 Pa. 598.

Between the original parties to an accommodation note the consideration can always be inquired into, and want of consideration is a good defense or bar to an action between them: Grubb v. Cottrell, 62 Pa. 23.

The auditor was correct in setting aside the judgment as fraudulent.

The forms and devices of fraud are legion, and it will be vain to enumerate or define them: Werner v. Zierfuss, 162 Pa. 360.

It is the chain of circumstances which must often be depended on to establish fraud: Eichenlaub v. Hall, 163 Pa. 204.

On the question of fraud see also Kaine v. Weigley, 22 Pa. 183, and Montgomery Web Co. v. Dienelt, 133 Pa. 595.

*Isaac Hiester*, with him *E. H. Flick, D. J. Neff* and *S. M. Meredith*, for appellee.—The confession of judgment is not a fraud in law. Whether it is fraud in fact or not must be dependent on the attending circumstances: Davis v. Charles, 8 Pa. 82.

No report is conclusive when the fact is a mere deduction from other facts: Phillips's Appeal, 68 Pa. 130; Sproull's Appeal, 71 Pa. 137; Kutz's Appeal, 100 Pa. 75.

Fraud is never to be presumed, but must always be proved by evidence that is clear and satisfactory to the jury: Collins v. Cronin, 117 Pa. 44; Kitchen v. McCloskey, 150 Pa. 376; Mead v. Conroe, 113 Pa. 220; Morton v. Weaver, 99 Pa. 47; Jones v. Lewis, 148 Pa. 234.

PER CURIAM, May 23, 1899:

The controlling facts of this case and the questions of law

arising thereon are sufficiently stated in the opinion of the court below, filed January 3, 1899, and need not be recited here.

Our consideration of the record has disclosed no error therein that would justify us in sustaining either of the six specifications of error. The subjects of complaint in the first and second are that the court erred "in overruling" the findings of the auditor recited therein respectively. For reasons given by the learned judge, we think he was clearly right in refusing to sustain either of said findings. We are also of opinion that he was right in refusing to adopt the auditor's schedule of distribution, and in distributing the fund in the sheriff's hands as specified in the decree from which this appeal was taken. The correctness of the learned judge's action in each of the matters complained of by the appellants in their assignments of error, respectively, is so fully vindicated in the opinion referred to that we are quite content to affirm the decree for reasons therein given.

The decree is accordingly affirmed on his opinion, and the appeal is dismissed at appellant's costs.